IN THE UNITED STATES COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| FOUR STAR RANCH, INC., <br><br> Plaintiff, <br><br><br><br><br> vs. <br><br><br> ALAN COOPER, an individual; SUZANNE BARFUSS, an individual; ADRIANNE WOOTEN, an individual; OURAY PARK WATER IMPROVEMENT DISTRICT, a public entity, et al., <br><br> Defendants. | MEMORANDUM DECISION AND ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT <br><br><br><br><br><br> Case No. 2:08-CV-394 TS |

## I. INTRODUCTION

Plaintiff Four Star Ranch, Inc. (Four Star), a developer, brought four claims against Defendants, the Ouray Park Water Improvement District (Water Improvement District or OPWID), and its three trustees, Defendants Alan Cooper (Cooper), Suzanne Barfuss (Barfuss), and Adrianne Wootton (Wootton). Defendants seek summary judgment based on various immunities and because the undisputed facts show they are entitled to judgment as matter of law.

The Court will grant summary judgment on the grounds that the state law claims are barred

by the failure to give notice under the Utah Governmental Immunity Act (UGIA) and, alternatively, because Defendants have shown the absence of evidence on the elements of Plaintiff's claims. The Court will also grant summary judgment on the federal claims for the failure to show a violation of a federally protected right.

## II. BACKGROUND

Four Star is involved in residential development and the development of a commercial gravel pit and a RV park. Before proceeding with these projects, Plaintiff must obtain both a supply of culinary water and permits from various governmental agencies. Four Star argues that this culinary water must come from OPWID, which is "a public entity created pursuant to Utah Code § 17B-1-101, et seq."[1] Access to culinary water is obtained by applying to Defendant OPWID for a hookup and then paying a hookup fee.

Four Star alleges that OPWID "is charged with improving the Area by providing access to water to the surrounding landowners."[2] "Defendant Water District exercises complete authority over the availability of culinary water resources, and essentially possesses a state-sponsored monopoly over culinary water in the Area."[3] Defendant OPWID is controlled by a Board of Trustees, consisting of Defendants Cooper, Barfuss, and Wootton.[4]

During March or April 2006, Four Star applied to Defendant OPWID for seven to eleven

---

[1] Plaintiff's Amended Complaint, Docket No. 26 ¶¶ 2, 9.

[2] *Id.* ¶ 10.

[3] *Id.* ¶ 11.

[4] *Id.* ¶¶ 2–5.

hookups, five to six of which were approved.[5]  In approximately August 2007, Four Star called Defendant Cooper about receiving eight more hookups.[6]  Defendant Cooper allegedly stated that there were "20–40 more hookups available in the system, depending on where they were."[7]  Four Star relied on this statement and discussed the sale of the property with a potential buyer, who agreed to the purchase contingent on the availability of the hookups.  The third party then called Defendant Cooper to confirm that the hookups were available.[8]  Defendant Cooper allegedly denied, via phone, first to the third party and then to Four Star, that there were any hookups available.[9]  Four Star never submitted a written request or application for these hookups, but insists that it complied with the standard procedure for requesting hookups.[10]

Four Star also sought approval for a gravel pit project from the Uintah County Planning Commission (UCPC) and the Uintah County Commission, and approval for a zoning change for a property near Leota, Utah, from the UCPC.  In its complaint, Four Star alleges that Defendant Cooper, in relation to these applications, "told multiple falsehoods and slanderous untruths to Uintah County officials and others to discredit Four Star and ruin its good reputation."[11]

---

[5]Plaintiff's Mem. in Opp. to Defendant's Mot. for Summ. J., Docket No. 41, at 5; Yeaman Dep., Docket No. 41, Ex. A 194:4–13.

[6]Docket No. 41, at 5–6.

[7]Yeaman Dep., Docket No. 41, Ex. A 194:14–195:17.

[8]*Id.* at 196:13–22.

[9]*Id.* at 196:13–198:3.

[10]Docket No. 41, at 6.

[11]Docket No. 26 ¶ 42.

The record also indicates that Four Star voluntarily withdrew its application relating to the Leota project prior to the UCPC meeting in which Cooper allegedly made his statement[12] and, notwithstanding Defendant Cooper's alleged slander, the UCPC approved Four Star's gravel pit proposal.

### III. STANDARD OF REVIEW

Summary judgment is proper if the moving party can demonstrate that there is no genuine issue of material fact and it is entitled to judgment as a matter of law.[13]  In considering whether genuine issues of material fact exist, the Court determines whether a reasonable jury could return a verdict for the nonmoving party in the face of all the evidence presented.[14]  The Court is required to construe all facts and reasonable inferences in the light most favorable to the nonmoving party.[15]

As the Tenth Circuit has explained, although the Defendants, as movants, "bear the initial burden of demonstrating the absence of a genuine issue of material fact;" because they will "not bear the burden of persuasion at trial, they "may make its prima facie demonstration simply by pointing out to the court a lack of evidence for the nonmovant on an essential element of the nonmovant's claim."[16]  If Defendants properly support their motion for summary judgment, by pointing out the

---

[12]*Id.* (citing Jensen Deposition, Docket No. 39, Ex. F, at 51:6–52:15, 55:6–11).

[13]FED. R. CIV. P. 56(c).

[14]*See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986); *Clifton v. Craig*, 924 F.2d 182, 183 (10th Cir. 1991).

[15]*See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Wright v. Southwestern Bell Tel. Co.*, 925 F.2d 1288, 1292 (10th Cir. 1991).

[16]*Bennett v. Quark, Inc.*, 258 F.3d 1220, 1224 (10th Cir. 2001).

4

lack of evidence, "the burden shifts to the nonmoving party to go beyond the pleadings and set forth specific facts from which a reasonable jury could find in favor of the nonmoving party."[17]

Reference to facial assertions in a complaint are not sufficient to overcome Rule 56 summary judgment when the record as a whole reveals that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.

> The nonmoving party may not rest upon the mere allegations or denials of [its] pleading. The nonmoving party must go beyond the pleadings and establish, through admissible evidence, that there is a genuine issue of material fact that must be resolved by the trier of fact. The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff.[18]

## IV. DISCUSSION

Four Star's Amended Complaint alleges four causes of action against Defendants. Four Star alleges that: 1) Defendants deprived it of its rights to substantive due process by denying its applications for arbitrary and capricious reasons; 2) Defendants violated its rights to equal protection by denying its hookup requests for unavailability while at the same time granting hookups to other similarly situated individuals; 3) Defendant Cooper "told multiple falsehoods and slanderous untruths to Unitah County officials and others to discredit Four Star and ruin its good reputation, and also to prevent Four Star from obtaining water hookups and developing its property;" and 4) Defendants' actions relating to the first three claims constitute tortious interference with Four Star's

---

[17]*Id.*

[18]*Salehpoor v. Shahinpoor,* 358 F.3d 782, 786 (10th Cir. 2004) (quoting *Panis v. Mission Hills Bank, N.A.*, 60 F.3d 1486, 1490 (10th Cir.1995) (internal citations and quotations omitted)).

existing and potential economic relations.[19] Four Star alleges Defendants were acting "in their official capacity" when they performed each of these actions and Defendant Cooper was also acting in his personal capacity when he slandered Four Star.[20]

Defendants argue that they are entitled to summary judgment on all claims for the following reasons. First, Defendants argue that the claims fail and the Court lacks jurisdiction due to Four Star's failure to provide notice under the Utah Governmental Immunity Act[21] (UGIA). Defendants also argue that they are entitled to UGIA, Eleventh Amendment, quasi-judicial, and/or witness immunity. They further argue that the federal claims are inappropriately brought under 42 U.S.C. § 1983 because this section does not apply to state agencies or officials acting in an official capacity. Finally, Defendants argue that they are entitled to summary judgment because the undisputed facts disprove Four Star's allegations.

### A. Utah Governmental Immunity Act

#### 1. Inapplicable to claims under § 1983

Defendants argue both that they are immune to suit under the UGIA and that failure to provide notice under the UGIA leaves the Court without jurisdiction. Four Star counters that the UGIA is not a valid defense to a claim for relief under 42 U.S.C. § 1983 and therefore does not deprive the Court of jurisdiction over Four Star's federal claims.

The United States Supreme Court has stated that "[c]onduct by persons acting under color

---

[19]First Amended Complaint, Docket No. 26, at 8–11.

[20]*Id.*

[21]UTAH CODE ANN. §§ 63G-7-101 to 904.

6

of state law which is wrongful under 42 U.S.C. § 1983 . . . cannot be immunized by state law. . . . The immunity claim raises a question of federal law."[22] Utah courts have also held that this specifically applies with respect to the UGIA. "'In general, state government immunity statutes do not apply to suits brought under [section] 1983.'"[23] "Instead, '[t]he issue of immunity in a federal civil rights case is a matter of federal law.'"[24]

Four Star's claims for violation of equal protection and due process are brought under 42 U.S.C. § 1983, as the statute provides a cause of action to any party who has been "depriv[ed] of any rights, privileges, or immunities secured by the Constitution and laws" by any "person who [does so] under color of any statute, ordinance, regulation, custom, or usage."[25] Therefore, the UGIA and its notice requirements do not apply to those claims. However, as discussed below, the UGIA applies to bar the remaining state-law claims against Defendant.

### 2. Analysis with respect to the state-law claims

Four Star's claims for slander and tortious interference with economic relations cannot be brought under 42 U.S.C. § 1983, as they do not have any alleged basis in federal law. The UGIA would therefore apply to these claims and may provide Defendants with immunity from them. Four Star does not address Defendants' possible immunity under the UGIA for the state-law claims or the

---

[22]*Martinez v. California*, 444 U.S. 277, 284 n.8 (1980) (quoting *Hampton v. Chicago*, 484 F.2d 602, 607 (7th Cir. 1973)).

[23]*Cline v. State, Div. of Child & Family Servs.*, 142 P.3d 127, 132 (Utah Ct. App. 2005) (quoting *Baker ex rel. Baker v. Angus*, 910 P.2d 427, 432 (Utah Ct. App. 1996)).

[24]*Cline*, 142 P.3d .at 133 (quoting *Ambus v. Utah State Bd. of Educ.*, 858 P.2d 1372, 1377 (Utah 1993)).

[25]42 U.S.C. § 1983.

UGIA notice requirements with respect to these claims. The Court now conducts this inquiry.

The UGIA protects governmental entities and employees of governmental entities in two ways. The UGIA first bars claims against governmental entities and employees of governmental entities, with some exceptions discussed below, that are made without first providing notice under the requirements of the Act. Second, even if notice is filed properly, the UGIA grants governmental entities and their employees immunity "from suit for any injury that results from the exercise of a governmental function."[26] The statute defines "governmental entity" as "the state and its political subdivisions."[27] A number of entities qualify as "political subdivisions," including "any . . . special improvement or taxing district, local district, special service district . . . or other governmental subdivision or public corporation."[28]

Defendant OPWID is a governmental entity as defined by the UGIA. Four Star's Amended Complaint states that "Defendant Ouray Park Water Improvement District . . . is a public entity created pursuant to Utah Code § 17B-1-101, et seq." This section of the code is titled "Provisions Applicable to All Local Districts," and talks exclusively about different types of local districts, including Improvement Districts. Because Four Star's allegations are that Defendant OPWID is a governmental entity under the UGIA, and Four Star has not provided any evidence to the contrary, Defendant OPWID is eligible for immunity under the UGIA if the conditions set forth below are met. Remaining Defendants Cooper, Barfuss, and Wootton are considered employees under the UGIA,

---

[26]UTAH CODE ANN. § 63G-7-201(1).

[27]UTAH CODE ANN. § 63G-7-102(3).

[28]*Id.* § 63G-7-101(7).

as they are members of the OPWID Board of Trustees and, under the UGIA, "[e]mployee includes . . . members of a government entity board."[29]  Therefore, they are also eligible for immunity under the UGIA.

### a. The notice provisions of the UGIA

Because all Defendants fall within the scope of the statute, Four Star's state-law claims could be barred under the notice provisions of the UGIA.  The statute states:

> Any person having a claim against a governmental entity, or against its employee for an act or omission occurring during the performance of the employee's duties, within the scope of employment, or under color of authority shall file a written notice of claim with the entity before maintaining an action, regardless of whether or not the function giving rise to the claim is characterized as governmental.[30]

In cases against local districts or special service districts, the UGIA requires notice to be filed with "the presiding officer or secretary/clerk of the board."[31]  Notice must be filed within one year after the claim arises,[32] and include a brief statement of the facts, the nature of the claim, the damages incurred by the claimant, and, if being brought against a governmental employee individually, the name of the employee against whom the claim is brought.[33]  If notice is not properly filed with the entity, the claim "is barred . . . regardless of whether or not the function giving rise to the claim is

---

[29]*Id.* § 63G-7-102(3).

[30]*Id.* § 63G-7-401(2).

[31]*Id.* § 63G-7-401(3)(b).

[32]*Id.* § 63G-7-402.

[33]*Id.* § 63G-7-401(3)(a).

characterized as governmental."[34]

In the present case, Defendants assert that Four Star did not provide notice of these claims prior to bringing suit.[35]  Four Star has not submitted any evidence to the contrary.   Therefore, under the UGIA, all claims with a basis in state law against Defendant OPWID and Defendants Cooper, Barfuss, and Wooton "for an act or omission occurring during the performance of [their] duties, within the scope of employment, or under color of authority"[36] are barred by the UGIA. consequently, the Court will now determine whether the record supports any of Four Star's state-law claims against Defendants Cooper, Barfuss, or Wooton for acts committed in a way that is not associated with their employment or duties or done under color of authority.

### 1. Four Star's claim for slander

Four Star's Complaint alleges that Defendant Cooper "told multiple falsehoods and slanderous untruths to Uintah County officials and others to discredit Four Star and ruin its good reputation, and also to prevent Four Star from obtaining water hook-ups and developing its property."[37]  All of these allegations relate to either 1) Four Star's proposed zoning change for its property near Leota, Utah, or 2) Four Star's proposed gravel pit.[38] Both of these proposals were before the Uintah County Planning Commission ("UCPC"), while the gravel pit proposal was also

---

[34]*Id.* § 63G-7-402.

[35]Docket No. 39, Ex. G.

[36]*Id.* § 63G-7-401(2).

[37]Docket No. 26 ¶ 42.

[38]UTAH CODE ANN. *Id.* ¶¶ 20–24.

before the Uintah County Commission.[39]

While referring to its claim for slander, Four Star states that "Defendant Cooper's actions were done *under the color of law* because *in each and every instance* Defendant Cooper used his position as trustee to bolster his credibility and authority."[40]  Four Star also alleges that Defendant Cooper was acting "in his official capacity" when he slandered Four Star[41] and that he "identified himself as the chairman of the Water District"[42] before doing so.  Four Star has not identified any facts to show that the alleged slander was not committed under color of state law.   Furthermore, Four Star does not dispute that notice was not provided to Defendants prior to the commencement of this action.  Thus, Defendant Cooper has established that he is entitled to summary judgment on Four Star's claim for slander.

More significantly, Four Star has not put forth facts sufficient to support *any* claim for slander against any Defendant.  "Slander and libel are a subset of defamation."[43]  "To state a claim for defamation, [Four Star] must show that defendants published the statements concerning [it], that the statements were false, defamatory, and not subject to any privilege, that the statements were published with the requisite degree of fault, and that their publication resulted in damage."[44]

---

[39]*Id.*

[40]*Id.* ¶ 24 (emphasis added).

[41]*Id.* ¶¶ 15, 20, 22, 23, 25.

[42]*Id.* ¶ 21.

[43]*Jensen v. Sawyers*, 130 P.3d 325, 333 n.6 (Utah 2005)

[44]*West v. Thomson Newspapers*, 872 P.2d 999, 1007–1108 (Utah 1994) (citations omitted).

Defendant Cooper also argues that he is entitled to summary judgment on Plaintiff's claim for slander because the undisputed facts show that Plaintiff was not harmed by Cooper's statements[45] or that those statements were false. Specifically, Defendant argues that Plaintiff was not harmed 1) because Plaintiff voluntarily withdrew its application relating to the Leota project prior to the UCPC meeting in which Cooper allegedly made his statement,[46] 2) because Defendant Cooper's alleged statements were irrelevant to the gravel pit,[47] and 3) because, notwithstanding Defendant Cooper's alleged slander, the UCPC approved Plaintiff's gravel pit proposal.[48]

Plaintiff responds to Defendants' assertion that the Leota project was not affected by Defendant Cooper's statements by arguing that "[o]ne of the reasons the Leota development has not gone forward is because of Defendants' refusal to cooperate in providing culinary water."[49] However, this statement does not support the assertion that Defendant Cooper's alleged slander in any way prevented the Leota development from progressing. Furthermore, Plaintiff does not dispute that it withdrew its application for the Leota project prior to the UCPC meeting where Defendant Cooper allegedly slandered Plaintiff.

Plaintiff also argues that "there is evidence to support Plaintiff's claims that Defendant Cooper knowingly made false statements to [county and state officials], that these false statements

---

[45]Docket No. 39, at vi.

[46]*Id.* (citing Jensen Dep., Docket No. 39, Ex. F, at 51:6–52:15, 55:6–11).

[47]*Id.* (citing Yeaman Dep., Docket No. 39, Ex. D, at 226:23–227:11, 229:18–230:5).

[48]*Id.* (citing *id*. at 229:18–230:5).

[49]Docket No. 41, at 7 (citing Jensen Dep., Docket No. 41, Ex. C, at 53:1–16).

caused Plaintiff damage to its reputation generally, and that at least the false statements to the Department of Transportation caused damage to specific business projects that it was pursuing."[50] However, the record does not support these assertions. Plaintiff cites only to the deposition of David Yeaman, Four Star's president, in support of the assertion that "these false statements caused Plaintiff damage to its reputation generally," while it leaves the other statements unsupported.[51] In his deposition, Mr. Yeaman alleges damages from Defendant Cooper's statements, but acknowledges that he has no evidence that the statements led to any specific damages to Plaintiff.[52] He also acknowledges that whether Plaintiff was granted water by Defendants was irrelevant to the gravel pit proposal and that the UCPC approved the conditional use permit.[53]

The Utah Supreme Court held in *Oman v. Davis School District*,[54] that summary judgment was appropriate against plaintiff's claim for defamation because the plaintiff had "failed to identify the specific statements made . . . that were defamatory. He also failed to demonstrate that any such statements were false, not subject to privilege, and negligently published by defendants. Additionally, [he] failed to show how the statements resulted in damages."[55] Here, in response to the summary judgment motion, Plaintiff has also failed to come forward with evidence showing

---

[50]*Id.* at 17 (citation omitted).

[51]Yeaman Dep., Docket No. 42, Ex. A, at 227:18–229:9.

[52]*Id.* at 227:18–229:17.

[53]*Id.* at 229:18–230:5.

[54] 194 P.3d 956 (Utah 2008).

[55]*Id.* at 972 (citations omitted).

specific statements were false or that they resulted in damages. Accordingly, even if Four Star had provided the required notice under the UGIA, Defendant Cooper has shown that it is entitled to summary judgment on the claim for slander.

### 2. Plaintiff's claim for tortious interference with economic relations

As is discussed above, Defendant OPWID is a governmental entity, and Defendants Cooper, Barfuss, and Wootton are employees of the OPWID under the UGIA. Because Plaintiff did not provide Defendants with notice prior to commencing this action, its claim against Defendant OPWID for tortious interference with economic relations is barred by the terms of the statute, and its claim against the remaining Defendants is barred if Plaintiff's injury arose from acts or omissions "occurring during the performance of [their] duties, within the scope of employment, or under color of authority"[56]

Plaintiff's claim for tortious interference relies on Plaintiff's claims for violations of its federal civil rights and its claim for slander which are brought under 42 U.S.C. § 1983.[57] In *Gomez v. Toledo*[58] the United States Supreme Court held that " [b]y the plain terms of § 1983, two . . . allegations are required in order to state a cause of action under that statute. First, the plaintiff must allege that some person has deprived him of a federal right. Second, he must allege that the person

---

[56]UTAH CODE ANN. § 63G-7-401(2).

[57]Plaintiff's Amended Complaint, Docket No. 26 ¶ 7; Docket No. 41, at 9–10; *see also supra* Part IV.A.1 (stating that the UGIA did not apply to the civil rights claims because they were brought under § 1983).

[58]446 U.S. 635 (1980).

who has deprived him of that right acted under color of state or territorial law."[59]  Because Plaintiff's

claims for violations of its civil rights are brought under § 1983 and claims brought under § 1983

must allege a deprivation under color of authority, the tortious interference claims must necessarily

allege acts or omissions by Defendants that occurred under color of authority.

Because Plaintiff did not file notice with Defendants under the UGIA for its claim for tortious

interference with economic relations and the claim relies upon alleged acts or omissions that

occurred while Defendants were acting in their official capacities, the claim is barred by the notice

provisions of the UGIA.

Further, to the extent that Four Star's claim of tortious interference is based on the slander

claim, for the reasons stated above, summary judgment is appropriate on that claim even absent the

UGIA notice issue, for the failure to show injury.[60]

### B. Applicability of § 1983 to Defendants

1.  **OPWID**

The Court next turns to Plaintiff's claims for violation of his rights to equal protection and

substantive due process.  Defendants argue for summary judgment on these § 1983 claims because

Defendant OPWID, as an improvement district, is not a person under § 1983 and, therefore, it and

its employees acting in an official capacity cannot be subject to suit.  As set forth below, it appears

---

[59]*Id.* at 640.

[60]*See St. Benedict's Dev. Co. v. St. Benedict's Hosp.*, 811 P.2d 194, 200 (Utah 1991)
(holding that to show tortious interference, a "plaintiff must prove (1) that the defendant
intentionally interfered with the plaintiff's existing or potential economic relations (2) for an
improper purpose or by improper means, (3) causing injury to the plaintiff").

that Defendant OPWID is a "person" under § 1983 and can therefore be subject to suit under the statute.

In order to state a claim under § 1983 "a plaintiff must allege '(1) a violation of rights protected by the federal Constitution or created by federal statute or regulation, (2) proximately caused (3) by the conduct of a 'person' (4) who acted under color of any statute, ordinance, regulation, custom, or usage, of any State."[61]

A valid claim under § 1983 must be against a "person."[62] The United States Supreme Court has stated that "neither a State nor its officials acting in their official capacities are 'persons' under § 1983" and are therefore not subject to suit,[63] while "municipalities and other local government units" are considered persons and "can be sued directly under § 1983."[64]

Defendants argue that they are exempt from suit under § 1983 by referencing Utah case law distinguishing improvement districts, like Defendant OPWID, from municipal corporations. The Utah Supreme Court has held that "an Improvement District is a separate arm of the government and not a mere adjunct of a county performing county functions"[65] and "improvement districts are a separate entity of government and not 'municipal corporations' as contemplated by the

---

[61]*Beedle v. Wilson*, 422 F.3d 1059, 1064 (10th Cir. 2005) (quoting *Summum v. City of Ogden,* 297 F.3d 995, 1000 (10th Cir. 2002)).

[62]*See* 42 U.S.C. § 1983.

[63]*Will v. Mich. Dept. of State Police*, 491 U.S. 58, 71 (1989).

[64]*Monell v. Dept. of Soc. Serv. of N.Y.*, 436 U.S. 658, 690 (1978).

[65]*Tygesen v. Magna Water Co.*, 226 P.2d 127, 131 (Utah 1950).

Constitution."[66]  This Court has also held, in reference to the UGIA, that "Utah law is clear that political subdivisions," like Defendant OPWID, "enjoy the same immunity possessed by the State of Utah."[67]

However, these holdings discussing state law do not exempt Defendant OPWID from suit under § 1983.  The United States Supreme Court has stated, in reference to the applicability of § 1983 to governmental entities, that "[t]he elements of, and the defense to, a federal cause of action are defined by federal law."[68]  "[S]ince the Court has held that municipal corporations and similar governmental entities are 'persons,' a state court entertaining a § 1983 action must adhere to that interpretation."[69]  Therefore, the State's desire to grant immunity to political subdivisions cannot preempt federal law holding otherwise, and a determination regarding whether a particular defendant can be tried under § 1983 is a question of federal law.

Defendants assert in their Motion for Summary Judgment that Defendant OPWID is an "improvement district," while citing to UTAH CODE ANN. § 17B-1-102(9)(11)(17).  This section is part of Title 17B, which is entitled "Limited Purpose Local Government Entities - Local Districts." Plaintiff does not agree with Defendants' assertion, although neither party has introduced facts relating to this issue.  However, both parties agree that Defendant is a local district subject to the

---

[66]*Freeman v. Stewart*, 273 P.2d 174, 176 (Utah 1954).

[67]*MacArthur v. San Juan County*, No. 2:00CV584K, 2000 WL 35439198, at *7 (D. Utah Oct. 30, 2000).

[68]*Howlett v. Rose*, 496 U.S. 356, 375 (1990).

[69]*Id*. at 376 (citations omitted) (internal quotation marks omitted).

provisions of Utah Code Ann. ch. 17B-1.[70]

As a local district, Defendant OPWID and its employees acting in an official capacity are "persons" under § 1983. Although the UGIA makes it clear that political subdivisions such as Defendant OPWID[71] are immune from certain state suits, this protection does not extend to suits brought under § 1983.[72] Because this is a question of federal law, if the Court finds that Defendant OPWID is a "municipalit[y] or other government unit[]" then it is a "person to whom § 1983 applies."[73]

The provisions governing local districts state that a local district is "a quasi-municipal corporation." Although quasi-municipal corporations are not specifically addressed by the Supreme Court, "municipal corporations are 'persons' within the meaning of 42 U.S.C. § 1983."[74] Furthermore, the Tenth Circuit, when examining whether a "quasi-municipality" could bring suit under § 1983, treated the quasi-municipality like any other municipality under § 1983.[75]

---

[70]Plaintiffs state this in their complaint, Plaintiff's Amended Complaint, Docket No. 26 ¶¶ 2, while Defendants state that they are an improvement district which 17B-1-102(9) defines as "a local district that operates under and is subject to the provisions of this chapter and Chapter 2a, Part 4, Improvement District Act." None of the provisions of the Improvement District Act are relevant in this analysis.

[71]*See* Utah Code Ann. § 17B-1-103(1) (stating that local districts are political subdivisions of the state).

[72]*See supra* Part IV.A.1.

[73]*Monell v. Dept. of Soc. Serv. of N.Y.*, 436 U.S. 658, 690 (1978).

[74]*City of St. Louis v. Praprotnik*, 485 U.S. 112, 167 (1988).

[75]*Rural Water Dist. No. 1, Ellsworth County, Kan. v. City of Wilson, Kan.*, 243 F.3d 1263, 1274 (10th Cir. 2001).

The provisions governing local districts also state that they "may sue and be sued." This provision and their status as quasi-municipal corporations compel the holding that local districts such as Defendant OPWID are "persons" under § 1983.

Although Defendants are considered persons and may be subject to suit under § 1983, each suit must still meet the requirements of the statue. The *Monell* Court limited the liability of municipalities under § 1983, stating that "a municipality cannot be held liable *solely* because it employs a tortfeasor—or, in other words, a municipality cannot be held liable under § 1983 on a *respondeat superior* theory."[76] "Instead, in *Monell* and subsequent cases, [the Court has] required a plaintiff seeking to impose liability on a municipality to identify a municipal 'policy' or 'custom' that caused the plaintiff's injury."[77] It is not enough to identify conduct properly attributable to the municipality.[78] "The plaintiff must also demonstrate that, through its *deliberate* conduct, the municipality was the 'moving force' behind the injury alleged. That is, a plaintiff must show that the municipal action was taken with the requisite degree of culpability and must demonstrate a direct causal link between the municipal action and the deprivation of federal rights."[79]

Therefore, Defendants are subject to a § 1983 suit only if their actions represent governmental custom or the implementation or execution of a policy officially adopted and promulgated by the OPWID Board of Trustees.

---

[76]*Monell*, 436 U.S. at 691.

[77]*Bd. of County Comm'rs v. Brown*, 520 U.S. 397, 403 (1997).

[78]*Id*. at 404.

[79]*Id.*

Here, Plaintiff has not come forth with evidence from which a reasonable jury could find that Plaintiff's alleged injuries were caused by a policy or custom of Defendant OPWID. Plaintiff does not provide facts stating that the few hookups that were not granted in their first application were wrongfully denied. Most significantly, Plaintiff admits that it did not actually apply to the Board of Trustees for the second set of hookups that it sought.[80] It instead argues that Defendant Cooper's alleged individual denial is indicative of board policy. However, to the extent that Plaintiff's claim against OPWID is based on Defendant's Cooper's action, Plaintiff must show a violation of a federally protected right. For the reasons stated below, Plaintiff has not shown such a violation. Therefore, OPWID is entitled to summary judgment on the § 1983 claims..

### 2. Individual capacity claims

Defendants argue that the Amended Complaint only brings claims against Defendants Cooper, Barfuss, and Wooten in their official capacities. Plaintiff responds that in the caption, these Defendants were named in their individual capacities and also that they raised defenses applying to their individual capacities.

The Court need not resolve this issue. Even if the Amended Complaint's continual reference to Defendants acting in their official capacities were read broadly as variations of acting under color of state law, they would still be entitled to summary judgment on the § 1983 claims.

As to Defendants Barfuss and Wootton, in response to Plaintiff's pointing out the lack of evidence, Plaintiff has submitted no evidence as to their individual actions. At this stage of the proceedings, Four Star cannot rely on allegations, but must come forward with specific facts and has

---

[80]Yeaman Dep., Docket No. 41, Ex. A 194:14–195:17.

not done so, as to Defendants Barfuss and Wootton.  Therefore, summary judgment is appropriate

as to them on any individual capacity claims under §1983.

As to Defendant Cooper on the equal protection claim, Plaintiff has not come forward with

any actual facts to show similarly situated persons were treated differently in being granted hookups.

It relies merely on testimony that three other individuals were granted hookups but has not shown

how those people are  similarly situated.  As set forth in detail in *Highland Dev., Inc. v. Duchesne*

*County*:

> The question of whether individuals are similarly situated is a factual question. But
> "a court may properly grant summary judgment where it is clear that no reasonable
> jury could find that the similarly situated requirement has been met."[81]
>
> * * *
>
> "The requirement that a plaintiff show that similarly situated persons were treated
> differently 'is especially important in class-on-one cases.'"  Plaintiffs must
> demonstrate similarity "in all material respects," and "cannot prevail if there is any
> material difference between it and allegedly similarly situated parties that relates to
> a governmental interest." This is a heavy burden. *See, e.g., Jicarilla Apaache Nation*,
> ("when the class consists of one person or entity, it is exceedingly difficult to
> demonstrate that any difference in treatment is not attributable to a quirk of the
> plaintiff or even to the fallibility of administrators whose inconsistency is as random
> as it is inevitable").[82]

In this case, as in *Highland Dev.*, Plaintiff has raised a class-of-one equal protection claim.

Plaintiff has not, as a matter of law, satisfied the similarly situated requirement of a class-of-one

equal protection claim because other than their names, it has submitted nothing to show how the

---

[81]*Highland Dev., Inc. v. Duchesne County*, 505 F.Supp.2d 1129, 1150-51 (D. Utah 2007)
(quoting *McDonald v. Village of Winnetka*, 371 F.3d 992, 1002 (7th Cir. 2004)).

[82]*Highland Dev.*, 505 F.Supp.2d at 1150-51 (quoting *Jicarilla Apache Nation v. Rio
Arriba County,* 440 F.3d 1202, 1212 (10th Cir. 2006) (emphasis added in *Highland
Development*)).

three others that allegedly obtained permits in the same time period were situated, much less to show how they were situated compared to Plaintiff.

Plaintiff also argues that ill will and personal animus motivated the decision[83] and, therefore, it was treated differently. However, "in the Tenth Circuit, pretext, or subjective ill will, is not relevant to a class-of-one claim. If there is evidence of a rational government basis for the treatment, then the class-of-one claim fails as a matter of law."[84] Defendants' evidence of an objectively rational basis is the hydrologist report and that hookups were available only depending on where they were located. Plaintiff's representative admits that it was not unreasonable for the Board not to vote on his proposal to make improvements by drilling wells and then turning them over to the Board without looking into the issue further.[85] Plaintiff attempts to argue that his rights were violated because the Board did not indicate to its representative that they wanted to look further into the issue after it was tabled. However, the undisputed evidence, by the admission of Plaintiff's president, is that because Plaintiff never had water that it "could actually deliver to" the Board, the Board never accepted or rejected a further offer from Plaintiff after the issue was tabled.[86]

On substantive due process, it is undisputed that Plaintiff never submitted a written request or application for these hookups, but argues that requests made directly to Defendant Cooper "were how they did it" in the district.

---

[83]Pl.'s Mem. at 6.

[84]*Highland Development*, 505 F.Supp.2d at 1153 (quoting *Jicarilla Apache Nation*, 440 F.3d at 1210-11).

[85]Yeaman Dep. at 172.

[86]*Id.* at 186-87.

"To state a claim for a violation of due process, plaintiff must first establish that it has a protected property interest and, second, that defendants' actions violated that interest."[87]

Plaintiff's Amended Complaint claimed a property interest not in the hookups, but in "its real property, its business relationship and opportunities and its invested capital."[88] Plaintiff originally argued that "Defendants violated Plaintiff's rights to substantive due process in these property interests by causing the Water District to create a policy or custom to arbitrarily and capriciously deny water hook-ups to accomplish their personal agenda to limit growth in the area."[89] However, in its memorandum in opposition to summary judgment, Plaintiff clarifies that he now claims a liberty interest in "the continued development of the water district pursuant to state law and in obtaining hookups to the extent that the denial of those hookups was beyond the discretion of OPWID," "to be free from arbitrary and irrational decision related to the handing out of hookups," "in its reputation and in developing its property and conducting business free from arbitrary and improper interference."[90]

The Court need not address whether Plaintiff has a liberty interest in its reputation, because as noted above, it has not shown any specific statements made by Defendant Cooper that injured it. For example, Plaintiff admits that any alleged comments at a planning commission meeting did not cause it to deny any development. Plaintiff's representative did state that Cooper said numerous

---

[87]*Crown Point I, LLC v. Intermountain Rural Elec. Ass'n*, 319 F.3d 1211, 1216 (10th Cir. 2003).

[88]Amended Complaint at ¶ 28.

[89]*Id* at ¶ 29.

[90]Pl.'s Mem. at 12.

times that OPWID water was for culinary use only but has not show that such statements are false.

Thus, even assuming a liberty interest in reputation—by no means established on the record in the

this case—Cooper is entitled to judgment as a matter of law that Plaintiff has not shown a violation

of his substantive due process right based on damage to reputation.

To the extent that Plaintiff's substantive due process claim is now based on its interest in

obtaining the hookups,  Plaintiff has a very high burden as explained in *Highland Dev.*:

> "The [United States] Supreme Court defines 'property' as a 'legitimate claim of entitlement' to some benefit."[91]

> "An abstract need for, or unilateral expectation of, a benefit does not constitute 'property.' " Instead, there must be a legitimate claim of entitlement to the property interest.[92]

As in *Highland Development*, the Plaintiff herein has not demonstrated that water hookups

are "are a matter of statutory entitlement" and has not "engage[d] in the 'entitlement analysis' set

forth in *Hyde Park*:

> "The entitlement analysis centers on the degree of discretion given the decisionmaker and not on the probability of the decision's favorable outcome." To prevail, [the plaintiff] must therefore demonstrate that a set of conditions exist under state and local law, "the fulfillment of which would give rise to a legitimate expectation" that the [OPWID] would approve [the request].  In other words, [the plaintiff] must show that under the applicable law, the [OPWID] had limited discretion to disapprove the [requested water hookups.] "Otherwise, the city's decisionmaking lacks sufficient substantive limitations to invoke due process guarantees."[93]

---

[91]*Highland Dev.*, 505 F. Supp. 2d at 1154 (quoting *Hyde Park*, 226 F.3d at 1210 (quoting *B. of Regents v. Roth*, 408 U.S. 564, 577 (1972))).

[92]*Id.* quoting *Hyde Park*, 226 F.3d at 1210.

[93]*Id.* (quoting *Jacobs, Visconsi & Jacobs, Co. v. City of Lawrence*, 927 F.2d 1111, 1116 (10th Cir.1991)).

Plaintiff has not shown that the OPWID had limited discretion to disprove the requested water hookups or to agree to Plaintiff's proposal to provide improvements in exchange for water hookups. Nor has Plaintiff shown that the OPWID had limited discretion to determine how and in what manner to obtain funding. Thus, Plaintiff has not shown a protected property interest.

To the extent that Plaintiff claims it is unable to develop or use its real property and invested capital, and conduct business, such a claim is not ripe. As explained in *Highland Dev.*,

> to the extent that Plaintiffs contend that [OPWID's] actions interfered with the Plaintiffs' right to use their property as they see fit (within the bounds of reasonable regulation, of course), their claim is subsumed by the Fifth Amendment takings clause and they may not bring an independent substantive due process claim.[94]

As in *Highland Development*, the claim of the Plaintiff herein that it cannot use its property as it sees fit is a "claim[] of injury [that] certainly implicate[s] the takings clause . . . and [it has] not gone through the procedures necessary to properly position their claims for court review."[95]

Accordingly, without a showing of a protected property interest, Plaintiff has not shown a violation of a protected substantive due process right by Defendant Cooper or any other Defendant and Defendants are entitled to summary judgment.

## V. OTHER PENDING MOTIONS

After the Motion for summary judgment was fully briefed and submitted, Plaintiff filed a motion to compel discovery responses and to compel depositions. Defendants oppose these late-filed motions as untimely and harassing.

---

[94]*Id*. at 1158 (citation and footnote omitted).

[95]*Id.*

25

The discovery deadline in this case was August 15, 2009. The dispositive motion filing deadline was September 30, 2009. The present Motion for Summary Judgment was timely filed on September 30, 2009. It was fully briefed and submitted on November 23, 2009.

It was not until May 10, 2010, that Plaintiff filed its motion to amend the discovery schedule and take discovery. Plaintiff did not seek to continue the discovery deadline. Thus, discovery closed over a month before the present Motion was filed. Plaintiff did not seek additional time to respond to the summary judgment motion under Fed. R. Civ. P. 56(f) by raising any of its current arguments for additional discovery. Most recently, Plaintiff seeks leave to file a supplementary brief in support of compelling discovery on the ground that: "*After* this motion was fully brief, additional facts and controversies have arisen regarding discovery issues."[96]

The Court finds that the discovery motions and issues raised therein are untimely and will be denied.

Plaintiff also requested a hearing on the Motion for Summary Judgment. Upon review of the briefing, and having permitted Plaintiff to file a sur-reply brief, the Court found that a hearing would not be helpful.

## VI. ORDER

Based on the foregoing, it is therefore

ORDERED that Defendants' Motion for Summary Judgment (Docket No. 38) is GRANTED and summary judgment shall enter in favor of Defendants and against Plaintiff on all claims. It is further

---

[96]Docket No. 75, at 1 (emphasis added).

ORDERED that the request for a hearing (Docket No. 48) is DENIED and all other pending motions are denied as untimely.

The clerk of the court is directed to close this case forthwith.

DATED   September 2, 2010.

BY THE COURT:

_____

TED STEWART
United States District Judge